# IN THE UNITED STATES DISTRICT COURT FOR
# THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| Marvin B. Dinsmore, et al., on behalf of themselves and all others similarly situated,<br><br>  Plaintiffs,<br><br>v.<br><br>Scissortail Energy, LLC,<br><br>  Defendant. | Case No. 22-CV-352-GLJ |

## PLAINTIFFS' UNOPPOSED MOTION TO CERTIFY
## THE SETTLEMENT CLASS FOR SETTLEMENT PURPOSES,
## TO PRELIMINARILY APPROVE THE CLASS ACTION SETTLEMENT,
## TO APPROVE THE FORM AND MANNER OF NOTICE,
## AND TO SET A DATE FOR A FINAL FAIRNESS HEARING

Reagan E. Bradford, OBA #22072
Ryan K. Wilson, OBA #33306
BRADFORD & WILSON PLLC
431 W. Main Street, Suite D
Oklahoma City, OK 73102
Telephone: (405) 698-2770
reagan@bradwil.com
ryan@bradwil.com

–and–

James U. White, Jr., OBA #9545
WHITE, COFFEY AND FITE, P.C.
P.O. Box 54783
Oklahoma City, Oklahoma 73154
(405) 842-7545
jwhite@wcgflaw.com

**COUNSEL FOR PLAINTIFFS**

# TABLE OF CONTENTS

Table of Contents ............................................................................................................. i

Table of Authorities.......................................................................................................... ii

Introduction ...................................................................................................................... 1

Summary of the Litigation ................................................................................................ 2

Argument & Authority ...................................................................................................... 3

    A. The Court Should Certify the Settlement Class for Settlement Purposes ................. 3

        1. Numerosity.................................................................................................... 5

        2. Commonality.................................................................................................. 5

        3. Typicality ...................................................................................................... 6

        4. Adequacy of Representation........................................................................... 7

        5. Predominance................................................................................................ 8

        6. Superiority...................................................................................................10

    B. The Court Should Grant Preliminary Approval of the Proposed Settlement............10

        1. Plaintiffs and Their Counsel Have Adequately Represented
           the Settlement Class..................................................................................12

        2. The Proposed Settlement Was Negotiated at Arm's Length.........................13

        3. The Relief Provided for the Class Is Adequate, Taking into Account: ..........14

            (a) The Costs, Risks, and Delay of Trial and Appeal ...................................14

            (b) The Effectiveness of Any Proposed Method of
                Distributing Relief to the Class, Including the
                Method of Processing Class Members' Claims......................................15

            (c) The Terms of Any Proposed Award of Attorneys'
                Fees, Including Timing of Payment.......................................................16

            (d) Any Agreement Required to be Identified under Rule 23(e)(3) ..............16

        4. The Settlement Treats Class Members Equitably Relative to
           Each Other ...............................................................................................17

    C. The Court Should Preliminarily Approve the Proposed Notice
       of Settlement to the Settlement Class........................................................................17

    D. Appointment of JND Legal Administration as Settlement.....................................19

Conclusion.......................................................................................................................20

Certificate of Service.......................................................................................................21

## TABLE OF AUTHORITIES

### Cases

*Amoco Prod. Co. v. Fed. Power Comm'n*,
  465 F.2d 1350 (10th Cir. 1972) .......................................................................10

*Arkalon Grazing Ass'n v. Chesapeake Operating, Inc.*,
  275 F.R.D. 325 (D. Kan. 2011)......................................................................... 9

*Big O Tires, Inc. v. Bigfoot 4x4, Inc.*,
  167 F. Supp. 2d 1216 (D. Colo. 2001) ..........................................................10

*Cline v. Sunoco, Inc. (R&M)*,
  333 F.R.D. 676 (E.D. Okla. 2019) ...............................................................5–6

*D'Amato v. Deutsch Bank*,
  236 F.3d 78 (2d Cir. 2001) ...........................................................................13

*DG v. Devaughn*,
  594 F.3d 1188 (10th Cir. 2010) ...................................................................3, 5

*In re Motor Fuel Temperature Sales Practices Litig.*,
  271 F.R.D. 263 (D. Kan. 2010)................................................................ 4, 10, 11

*In re Telik, Inc. Sec. Litig.*,
  576 F. Supp. 2d 570 (S.D.N.Y. 2008)............................................................13

*Lucas v. Kmart Corp.*,
  234 F.R.D. 688 (D. Colo. 2006) .......................................................... 11, 14, 17

*Milonas v. Williams*,
  691 F.2d 931 (10th Cir.1982) ........................................................................ 5

*Mullane v. Cent. Hanover Bank & Trust Co.*,
  339 U.S. 306, 314 (1950) ..............................................................................17

*Reed v. GM Corp.*,
  703 F.2d 170 (5th Cir. 1983) ........................................................................13

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,
  314 F.3d 1180, 1188–89 (10th Cir. 2002)...................................................... 7

*Sears v. Atchison, Topeka & Santa Fe Ry., Co.*,
  749 F.2d 1451 (10th Cir. 1984) ....................................................................10

*Sherman v. Trinity Teen Solutions, Inc.*,
  84 F.4th 1182 (10th Cir. 2023) ............................................................... 4, 7, 9

*Tennille v. Western Union Co.*,
  785 F.3d 422 (10th Cir. 2015) ...................................................................... 3

*Tyson Foods, Inc. v. Bouaphakeo*,
  577 U.S. 442 (2016)....................................................................................5, 9

*Wilkerson v. Martin Marietta Corp.,*
    17 F.R.D. 273 (D. Colo. 1997) ..................................................................13

**Statutes**

Production Revenue Standards Act,
    OKLA. STAT. tit. 52, § 570.10 ............................................................*passim*

**Rules**

FED. R. CIV. P. 23 ...............................................................................*passim*

**Secondary Sources**

Newberg et al., NEWBERG ON CLASS ACTIONS (6th ed. Nov. 2023 update)........................ 5

MANUAL FOR COMPLEX LITIGATION § 13.14 (4th ed. 2004)...............................................11

# INTRODUCTION

After over one year of litigation, Plaintiffs have obtained a great recovery for the Settlement Class, reaching a settlement with Defendant worth $825,000 in cash for Plaintiffs' class claims for statutory interest owed on late payments of oil and gas proceeds under Oklahoma law. Having reached this agreement with Defendant and recovery for the Settlement Class, Plaintiffs now respectfully request that the Court preliminarily approve the classwide settlement. Specifically, Plaintiffs request that the Court:

    (1) certify the Settlement Class for Settlement purposes;

    (2) preliminarily approve the Settlement;

    (3) appoint Plaintiffs as Class Representatives for the Settlement Class;

    (4) appoint Reagan E. Bradford and Ryan K. Wilson of Bradford & Wilson PLLC as Co-Lead Class Counsel and James U. White, Jr. of James U. White, Jr. Inc. as Additional Counsel for the Settlement Class;

    (5) approve the form and manner of the proposed Notice;

    (6) appoint JND Legal Administration as Settlement Administrator; and

    (7) set a hearing date for final approval of the Settlement and application for an award of Plaintiffs' Attorneys' Fees, Litigation Expenses and Administration, Notice, and Distribution Costs, and a Case Contribution Award to Plaintiffs.[1]

Plaintiffs and Defendant have agreed to the form of the Preliminary Approval Order, which is Exhibit 1 to the attached Settlement Agreement (**Exhibit 1**) and which Plaintiffs will submit to the Court contemporaneously with the filing of this motion.

---

[1] Unless otherwise defined herein, Plaintiffs incorporate by reference the defined terms contained in the Settlement Agreement. *See* **Ex. 1**.

1

## SUMMARY OF THE LITIGATION

Plaintiffs Marvin B. Dinsmore and Sheridan Downey, III, as administrators of the Estate of David D. Dinsmore ("Plaintiffs") initiated this case with the filing of the Complaint on December 8, 2022, in which they alleged that Defendant Scissortail Energy, LLC ("Defendant") had failed to pay statutory interest owed on late payments under Oklahoma's Production Revenue Standards Act ("PRSA"). Doc. 2. Defendant filed its Answer on December 30, 2022. Doc. 11. The parties conferred on a Joint Status Report, which they filed on March 3, 2023. Doc. 14. The Court entered a scheduling order on March 6, 2023. Doc. 15. Plaintiffs served their first set of written discovery requests to Defendant on March 31, 2023, and Defendant served its objections and responses to those requests on May 1, 2023. The parties then conferred over a draft protective order for discovery purposes, and they jointly moved for the entry of the Stipulated Protective Order on May 17, 2023, Doc. 16, and the Court entered the Stipulated Protective Order the same day. Doc. 17.

During discovery, the parties agreed to first focus their efforts on the accounting data necessary to evaluate potential damages. *See* Doc. 18 at 1, ¶ 2. To fully evaluate the data, Plaintiffs' counsel also engaged consultants who are regularly retained to analyze and testify as to damages for late payment of oil and gas proceeds under Oklahoma law. The parties further agreed to explore early resolution of the case through mediation, and they ultimately engaged Bradley A. Gungoll as mediator, who has considerable experience mediating similar oil-and-gas late-payment class actions. After the parties agreed to mediate, they jointly moved the Court on November 21, 2023, to extend the scheduling order to allow the parties to explore resolution. Doc. 18. The Court entered an amended scheduling order on November 27, 2023. Doc. 21.

In the months leading up to mediation, the parties shared data and analysis aimed at narrowing the factual issues ahead of mediation. Defendant produced voluminous accounting data, which Plaintiffs' consultants analyzed to evaluate potential damages. The parties attended a day-long mediation with Bradley A. Gungoll on January 11, 2024, in Oklahoma City. Although the parties were unable to reach a classwide resolution at mediation, the day-long session materially advanced the negotiations, and the parties were ultimately able to reach a classwide resolution in the weeks following mediation. On January 23, 2024, the parties executed a term sheet memorializing the essential terms of their agreement, subject to a final definitive settlement agreement. Since that time, the parties have worked to draft and finalize the definitive settlement agreement. The parties ultimately executed the Settlement Agreement on March 5, 2024, a complete copy of which is attached as **Exhibit 1**.

## ARGUMENT & AUTHORITY

### A.    The Court Should Certify the Settlement Class for Settlement Purposes

In reviewing a proposed settlement for a putative class, the court determines whether the action may be maintained as a class action under Fed. R. Civ. P. 23. *See, e.g.*, *Tennille v. Western Union Co.*, 785 F.3d 422. 430 (10th Cir. 2015). Rule 23 examines four factors at class certification: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. Further, Rule 23(b) examines whether common questions predominate the dispute and whether the class action is superior to other methods.

District courts exercise "considerable discretion" in making class-certification decisions. *DG v. Devaughn*, 594 F.3d 1188, 1194 (10th Cir. 2010). The Tenth Circuit defers to a trial court's certification ruling "as long as the district court applies the proper Rule 23 standard and its decision falls within the bounds of rationally available choices given the facts and

law involved in the matter at hand." *Sherman v. Trinity Teen Solutions, Inc.*, 84 F.4th 1182, 1192 (10th Cir. 2023). In the settlement context, however, the court need not inquire as to trial manageability under Rule 23(b)(3)(D). *In re Motor Fuel Temperature Sales Practices Litig.*, 271 F.R.D. 263, 269 (D. Kan. 2010).

Plaintiffs and Defendant have stipulated to: (1) the certification of the Settlement Class for settlement purposes; (2) the appointment of Plaintiffs as class representatives; and (3) the appointment of Reagan E. Bradford and Ryan K. Wilson as Co-Lead Class Counsel and James U. White, Jr. as Additional Counsel for the Settlement Class. *See* **Ex. 1**, Settlement Agreement at 3. Accordingly, Plaintiffs move the Court to certify Settlement Class consisting of:

> All non-excluded persons or entities who, during the Claim Period: (1) received Late Payments from Defendant for oil-and-gas proceeds from Oklahoma wells; or whose proceeds were sent as unclaimed property to a government entity by Defendant; and (2) who have not already been paid statutory interest on the Late Payments. A "Late Payment" for purposes of this class definition means payment of proceeds from the sale of oil or gas production from an oil-and-gas well after the statutory periods identified in Okla. Stat. tit. 52, § 570.10(B)(1) (e.g., commencing not later than six (6) months after the date of first sale, and thereafter not later than the last day of the second succeeding month after the end of the month within which such production is sold). Late Payments do not include: (a) payments of proceeds to an owner under Okla. Stat. tit. 52, 570.10(B)(3) (minimum pay) or (b) prior period adjustments.

> Excluded from the Class are: (1) Defendant, its parents, affiliates, predecessors, and employees, officers, and directors; (2) agencies, departments, or instrumentalities of the United States of America or the State of Oklahoma; (3) any Indian tribe as defined at 30 U.S.C. § 1702(4) or Indian allottee as defined at 30 U.S.C. § 1702(2); and (4) Jack Mattingly, Kay Mattingly, Mike Healy Trust, f/k/a Mike Healy, d/b/a MCR Investments, C.E. Garrett, G&W, a Partnership, J.W. McTeirnan, Maxine Reynolds, Trustee of the Roy J. Reynolds and Maxine M. Reynolds Revocable Trust of 10/30/2020, and J.W. McTiernan.

*Id.* at 10, ¶ 1.38. Certification of the Settlement Class for settlement purposes furthers the interests of Class Members and Defendant by allowing this case to be settled on a class-wide

basis. The proposed Settlement Class satisfies the requirements of Rule 23, and thus this Court should certify the Settlement Class.

### 1. Numerosity

Rule 23(a)(1) requires "the class [be] so numerous that joinder of all members is impracticable." Here, the Settlement Class consists of thousands of owners dispersed throughout Oklahoma and other states, making joinder of all Class Members impracticable. *See Cline v. Sunoco, Inc. (R&M)*, 333 F.R.D. 676, 682 (E.D. Okla. 2019) ("the proposed class encompasses thousands of interest owners, which easily satisfies the numerosity requirement under Rule 23(a)(1)."); *see also* Newberg et al., 1 NEWBERG ON CLASS ACTIONS § 3:12 (6th ed. Nov. 2023 update) ("[A] class of 40 or more members raises a presumption of impracticability of joinder based on numbers alone."). Plaintiffs have identified thousands of potential Class Members. Further, Defendant has agreed the Settlement Class should be certified for settlement purposes. *See* **Ex. 1**, Settlement Agreement at 10. Numerosity is satisfied.

### 2. Commonality

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." A "common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (citation omitted). "Factual differences in the claims of the class members should not result in a denial of class certification where common questions of law exist." *Milonas v. Williams*, 691 F.2d 931, 938 (10th Cir. 1982). Plaintiffs need only show a single issue common to all members of a class. *See DG*, 594 F.3d at 1195; *see also* Newberg et al., *supra*, § 3:10.

This Court has certified, for settlement purposes, several similar class actions for the same claim at issue here, finding common issues existed. *See, e.g.*, *Indianola Res., LLC v. Calyx Energy III, LLC*, No. 21-CV-235-GLJ, Doc. 60 (E.D. Okla. Dec. 13, 2023) (preliminarily approving PRSA late-payment class for settlement purposes); *El Dorado Minerals, LLC v. Coffeyville Res. Refining & Mktg., LLC*, No. 23-CV-249-JAR, Doc. 21 (E.D. Okla. Aug. 29, 2023) (same); *Ritter v. Foundation Energy Mgmt., LLC, et al.*, No. 22-CV-246-JFH, Doc. 46 (E.D. Okla. Sept. 11, 2023) (same); *Lee v. PetroQuest Energy, L.L.C., et al.*, No. 16-CV-516-KEW, Doc. 152 (E.D. Okla. Jan. 11, 2023) (same). This Court has also certified a similar class action for the same claim on a contested basis. *See Cline v. Sunoco, Inc. (R&M)*, 333 F.R.D. 676 (E.D. Okla. 2019); *see also Sagacity, Inc. v. Magnum Hunter Prod., Inc., et al.*, No. 17-CV-101-GLJ, 2023 WL 7388897, at *1 (E.D. Okla. Nov. 8, 2023) (certifying, on a contested basis, royalty-underpayment class action premised on breach of lease claim).

Here, Plaintiffs' claims involve questions of law and fact that can be answered uniformly for the Settlement Class using common evidence. Plaintiffs' claims turn on whether Defendant paid owners statutory interest on payments of oil and gas proceeds made outside of the timeframes established by the PRSA. Plaintiffs allege that Defendant employed a uniform practice of failing to fully pay statutory interest under the PRSA, and this allegation presents common questions of fact and law for the class. Further, Defendant has agreed the Settlement Class should be certified for settlement purposes. *See* **Ex. 1**, Settlement Agreement at 10.

### 3. Typicality

Rule 23(a)(3) requires "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." "Like commonality, typicality does not require that

every member of the class share a fact situation identical to that of the named plaintiff." *Sherman v. Trinity Teen Solutions, Inc.*, 84 F.4th 1182, 1193 (10th Cir. 2023) (cleaned up). Rather, "typicality requires only that the claims of the class representative and class members are based on the same legal or remedial theory." *Id.* (cleaned up). Plaintiffs' claims are typical of the Settlement Class's claims because Defendant allegedly treated all owners in the same manner as to statutory interest owed on late payments under the PRSA. Put differently, the same legal theory and issues of fact underlie the claims of the Settlement Class and Plaintiffs because Defendant allegedly treated them uniformly. Accordingly, all Class Members who received a late payment under the PRSA suffered the same injuries arising out of similar facts. Further, Defendant has agreed the Settlement Class should be certified for settlement purposes. *See* **Ex. 1**, Settlement Agreement at 10. Plaintiffs satisfy typicality.

### 4.  Adequacy of Representation

Rule 23(a)(4) requires plaintiffs to show they "will fairly and adequately protect the interests of the class." In the Tenth Circuit, the adequacy requirement is satisfied when (1) neither plaintiff nor his counsel has interests in conflict with the interests of other class members and (2) plaintiff will prosecute the action vigorously through qualified counsel. *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188–89 (10th Cir. 2002). No conflicts exist between Plaintiffs or their counsel and other members of the Settlement Class. To the contrary, Plaintiffs share the same incentive as the Settlement Class to vigorously prosecute this case and obtain recovery.

Plaintiffs have done so, vigorously prosecuting this case through qualified counsel. Plaintiffs' Counsel are highly experienced in class actions, particularly class actions related to oil-and-gas payment claims under Oklahoma law. Plaintiffs' Counsel have been appointed as

lead or co-lead counsel in multiple previous class actions, including numerous class actions in this Court.[2] Moreover, Defendant has agreed the Settlement Class should be certified for settlement purposes. *See* **Ex. 1**, Settlement Agreement at 10. Plaintiffs and their counsel are adequate under Rule 23.

### 5. Predominance

Rule 23(b)(3) requires "questions of law or fact common to class members predominate over any questions affecting only individual members." "To assess predominance, the district court must determine whether the common, aggregation-enabling, issues in the case

---

[2] *See, e.g.*, *Cecil v. BP Am. Prod. Co.*, No. 16-CV-410-KEW (E.D. Okla. 2018); *Harris v. Chevron U.S.A., Inc.*, No.19-CV-355-SPS (E.D. Okla. 2019); *McNeill v. Citation Oil & Gas Corp.*, No. 17-CV-121-RAW (E.D. Okla. 2019); *Bollenbach v. Okla. Energy Acquisitions LP*, No. 17-CV-134-HE (W.D. Okla. 2018); *McKnight Realty Co. v. Bravo Arkoma*, No. 17-CV-308-KEW (E.D. Okla. 2018); *Speed v. JMA Energy Co., LLC*, No. CJ-2016-59 (Okla. Dist. Ct. Hughes Cty. 2019); *Henry Price Tr. v. Plains Mktg.*, No. 19-CV-390-KEW (E.D. Okla. 2021); *Hay Creek Royalties, LLC v. Roan Res. LLC*, No. 19-CV-177-CVE-JFJ (N.D. Okla. 2021); *Johnston v. Camino Nat. Res., LLC*, No. 19-CV-2742-CMA-SKC (D. Colo. 2021); *Swafford v. Ovintiv Inc., et al.*, No. 21-CV-210-SPS (E.D. Okla.); *Pauper Petroleum, LLC v. Kaiser-Francis Oil Co.*, No. 19-CV-514-JFH-JFJ (N.D. Okla.); *McKnight Realty Co v. Bravo Arkoma, LLC*, No. 20-CV-428-KEW (E.D. Okla.); *Rounds, et al. v. FourPoint Energy, LLC*, No. 20-CV-52-P (W.D. Okla.); *Hay Creek Royalties, LLC v. Mewbourne Oil Co.*, No. 20-CV-1199-F (W.D. Okla.); *Wake Energy, LLC v. EOG Res., Inc.*, No. 20-CV-183-ABJ (D. Wyo.); *Joanna Harris Deitrich Tr. A. v. Enerfin Res. I Ltd. P'ship, et al.*, No. 20-CV-084-KEW (E.D. Okla.); *Cowan v. Devon Energy Corp., et al.*, No. 22-CV-220-JAR (E.D. Okla.); *Kunneman Props. LLC, et al. v. Marathon Oil Co.*, No. 22-CV-274-KEW (E.D. Okla.); *Hoog v. PetroQuest Energy, L.L.C., et al.*, No. 16-CV-463 (E.D. Okla.); *Lee v. PetroQuest Energy, L.L.C., et al.*, No. 16-CV-516-KEW (E.D. Okla.); *Underwood v. NGL Energy Partners LP*, No. 21-CV-135-CVE-SH (N.D. Okla.); *Rice v. Burlington Res. Oil & Gas Co., LP*, No. 20-CV-431-GKF-SH (N.D. Okla.); *Dinsmore, et al. v. ONEOK Field Servs. Co., L.L.C.*, No. 22-CV-73-GKF-CDL (N.D. Okla.); *Dinsmore, et al. v. Phillips 66 Co.*, No. 22-CV-44-JFH (E.D. Okla.); *El Dorado Minerals, LLC v. Coffeyville Resources Refining & Marketing LLC*, No. 23-CV-249-JAR (E.D. Okla.); *Ritter v. Foundation Energy Mgmt., LLC, et al.*, No. 22-CV-246-JFH (E.D. Okla.); *Cowan v. Triumph Energy Partners, LLC*, 23-CV-300-JAR (E.D. Okla.).

are more prevalent or important than the non-common, aggregation-defeating, individual is-
sues." *Sherman*, 84 F.4th at 1194 (cleaned up). "Common, aggregation-enabling issues are
those that are susceptible to generalized, class-wide proof or for which the same evidence will
suffice for each member to make a prima facie showing; individual, aggregation-defeating
issues are those for which members of the proposed class will need to present evidence that
varies from member to member." *Id.* (cleaned up). Thus, when "one or more of the central
issues in the action are common to the class and can be said to predominate, the action may
be considered proper under Rule 23(b)(3) even though other important matters will have to
be tried separately, such as damages or some affirmative defenses peculiar to some individual
class members." *Tyson Foods*, 577 U.S. at 453 (citation omitted). Where, as here, Plaintiffs
and the Settlement Class's claims stem from a "common nucleus of operative facts," common
issues predominate and certification is appropriate. *Arkalon Grazing Ass'n v. Chesapeake Operat-
ing, Inc.*, 275 F.R.D. 325, 331 (D. Kan. 2011) (citation omitted).

Again, Plaintiffs allege that Defendant systemically improperly held statutory interest
owed on late payments under the PRSA. This alleged common course of conduct gives rise
to each Class Member's claim, resulting in a sufficiently cohesive Settlement Class to warrant
adjudication by representation. Because every Class Member's claim arises from Defendant's
alleged systematic and uniform approach to statutory interest under the PRSA, common ques-
tions predominate over any individual issues. Further, Defendant has agreed the Settlement
Class should be certified for settlement purposes. *See* **Ex. 1**, Settlement Agreement at 10.
Plaintiffs satisfy predominance.

### 6. Superiority

Rule 23(b)(3) ensures that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." In considering the superiority of a class action, courts consider:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). "In deciding whether to certify a settlement class, the Court need not inquire whether the case, if tried, would present difficult management problems under Rule 23(b)(3)(D)." *In re Motor Fuel Temperature Sales Practices Litig.*, 271 F.R.D. 263, 269 (D. Kan. 2010).

Superiority is easily satisfied here. There are no anticipated difficulties managing this case as a class action for settlement purposes only, and concentrating the Litigation in this forum is desirable. Further, Defendant has agreed the Settlement Class should be certified for settlement purposes. *See* **Ex. 1**, Settlement Agreement at 10. This is an obvious instance in which class treatment is the superior method of fair and efficient adjudication.

### B.    The Court Should Grant Preliminary Approval of the Proposed Settlement

Courts strongly favor settlement as a method for resolving disputes. *See Sears v. Atchison, Topeka & Santa Fe Ry., Co.*, 749 F.2d 1451, 1455 (10th Cir. 1984); *see also Trujillo v. Colo.*, 649 F.2d 823, 826 (10th Cir. 1981) (citing "important public policy concerns that support voluntary settlements"); *Amoco Prod. Co. v. Fed. Power Comm'n*, 465 F.2d 1350, 1354 (10th Cir. 1972). This is particularly true in large, complex class actions such as this one. *See Big O Tires, Inc. v. Bigfoot 4x4, Inc.*, 167 F. Supp. 2d 1216, 1229 (D. Colo. 2001).

Rule 23(e) guides the Court to approve a class action settlement when Rule 23's requirements are met and when the settlement is fair to the class members. Proposed class action settlements follow a two-step process. *In re Motor Fuel Temperature Sales Practices Litig.*, 258 F.R.D. 671, 675 (D. Kan. 2009); *see also* MANUAL FOR COMPLEX LITIGATION § 13.14 (4th ed. 2004). **First**, the Court conducts preliminary analysis to determine if there is any reason not to notify the class or proceed with the proposed settlement. *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006). **Second**, after the Court preliminarily approves the settlement, the class is provided notice and an opportunity to be heard at a final fairness hearing, at which point the Court considers whether the settlement should be finally approved. *See In re Motor Fuel*, 258 F.R.D. at 675.

In this Motion, Plaintiffs are asking the Court to undertake that first step. "The Court will ordinarily grant preliminary approval where the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval." *In re Motor Fuel*, 258 F.R.D. at 675 (internal quotations omitted). While "[t]he standards for preliminary approval are not as stringent as those applied for final approval," courts frequently refer to the final approval factors to determine whether a proposed settlement should be preliminarily approved. *Id.* at 675–76.

Fortunately, Rule 23 provides clear factors for the Court to review at this first step. Specifically, the Court should consider:

(1) the class representative and class counsel have adequately represented the class;

(2) the proposal was negotiated at arm's length;

(3) the relief provided for the class is adequate, taking into account:

(a) the costs, risks, and delay of trial and appeal;

(b) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-members claims;

(c) the terms of any proposed award of attorney's fees, including timing of payment; and

(d) any agreement required to be identified under Rule 23(e)(3); and

(4) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2) (numbering altered for briefing consistency). The proposed Settlement checks each of these boxes.

### 1. Plaintiffs and Their Counsel Have Adequately Represented the Settlement Class

Under this factor, the Court should consider "the nature and amount of discovery in this or other cases, or the actual outcomes of other cases, may indicate whether counsel negotiating on behalf of the class had an adequate information base." Fed. R. Civ. P. 23 advisory committee notes, 2018. Plaintiffs' Counsel have engaged in significant efforts with Defendant to reach the Settlement. Plaintiffs' Counsel have obtained, reviewed, and analyzed voluminous data produced by Defendant. Further, Plaintiffs and their counsel have engaged experts to review the information produced by Defendant so that the parties could appropriately consider the possibility of resolution. For months, counsel for Plaintiffs worked with experts in an effort to fully understand the data provided by Defendant and develop a damages model. This included frequent meetings, communications, and exchanges of additional data and material between the parties.

Further, as discussed *supra*, Plaintiffs' Counsel have served as counsel in many prior class action settlements involving the exact claims at issue in this case. Additionally, Plaintiffs' Counsel are involved in several other currently pending putative class actions for the exact claims at issue in this case. All of that is to say, the efforts of Plaintiffs' Counsel in other cases

have resulted in a collection of significant information laying the groundwork for the favorable Settlement reached in this case. The Settlement reached in this case with Defendant is on par or exceeds the proportionate settlement values reached in similar oil-and-gas class actions. Finally, Plaintiffs have remained actively involved in this effort and have thus adequately represented the Settlement Class.

### 2.  The Proposed Settlement Was Negotiated at Arm's Length

"[T]he value of the assessment of able counsel negotiating at arm's length cannot be gainsaid." *Reed v. GM Corp.*, 703 F.2d 170, 175 (5th Cir. 1983). Here, prior to reaching the Settlement, Plaintiffs' Counsel conducted extensive investigation and research into the claims asserted, reviewed extensive data, and consulted with experts. The Settlement is the product of arm's-length negotiations between Plaintiffs and Defendant and their experienced counsel at a point when Plaintiffs and Defendant possessed more than sufficient evidence and knowledge to allow them to make informed decisions about the strengths and weaknesses of their respective cases.

Further, the Settlement was reached through mediation: "The completeness and intensity of the mediation process, coupled with the quality and reputations of the Mediators, demonstrate a commitment by the Parties to a reasoned process for conflict resolution that took into account the strengths and weaknesses of their respective cases and the inherent vagaries of litigation." *Wilkerson v. Martin Marietta Corp.*, 17 F.R.D. 273, 285 (D. Colo. 1997). An experienced mediator's involvement "in the settlement negotiations strongly supports a finding that they were conducted at arm's-length and without collusion." *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 576 (S.D.N.Y. 2008); see also *D'Amato v. Deutsch Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (noting that a "mediator's involvement in . . . settlement negotiations

helps to ensure that the proceedings were free of collusion and undue pressure"). Here, the parties engaged Bradley A. Gungoll, who has significant experience mediating oil-and-gas class actions like this one. The parties attended a day-long mediation session with Mr. Gungoll, during which the parties negotiated extensively. Mr. Gungoll's integral involvement in the mediation and settlement process further assures that the Settlement is arm's-length. The Settlement reached in this case is the product of mutual, zealous advocacy, taking into the account the relative strength and weakness of each side's case. The second factor supports preliminary approval.

### 3.  The Relief Provided for the Class Is Adequate, Taking into Account:

#### (a)    The Costs, Risks, and Delay of Trial and Appeal

"Although it is not the role of the Court at this stage of the litigation to evaluate the merits . . . it is clear that the parties could reasonably conclude that there are serious questions of law and fact that exist such that they could significantly impact the case if it were litigated." *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693–94 (D. Colo. 2006) (internal quotations omitted). As strongly as both sides feel about the merits of their stance, each side here recognizes serious questions of law and fact exist in this case.

Though the parties were able to ultimately agree to a settlement amount, they still vehemently disagree on numerous factual and legal issues. Defendant denies any wrongdoing giving rise to liability under the PRSA. *See* **Ex. 1**, Settlement Agreement at 34, ¶ 11.1. Defendant has entered into this Settlement solely to eliminate the burden, expense, and distraction of further litigation. *See id.* Although Plaintiffs are optimistic about their chances of success at trial, they recognize there are a number of significant obstacles they would still have

14

to overcome to achieve success on behalf of the Settlement Class. Put simply, serious questions of law and fact remain in dispute. Importantly, the meaningful Settlement renders the resolution of these questions unnecessary and provides a guaranteed recovery in the face of uncertainty.

>    **(b)    *The Effectiveness of Any Proposed Method of Distributing Relief to the Class, Including the Method of Processing Class Members' Claims***

The proposed distribution method for this common-fund Settlement will be highly effective. Pursuant to the Settlement Agreement, Defendant will provide Plaintiffs' Counsel its payment history data for wells located in Oklahoma, including the names, last known addresses, and tax identification numbers of persons or entities receiving those payments. *See* **Ex. 1**, Settlement Agreement at 12, ¶ 3.2. The Settlement Administrator will make reasonable efforts to: (a) verify the last-known address of potential Class Members provided by Defendant and (b) locate current addresses of any potential Class Members for whom Defendant has not provided addresses. *Id.*

Subject to the Court's approval, Plaintiffs' Counsel will allocate the Net Settlement Fund to individual Class Members who are participating in the Settlement proportionately based on the extent of their injuries. *See* **Ex. 1**, Settlement Agreement at 19, ¶ 6.2. The Net Settlement Fund will be distributed by the Settlement Administrator as soon as reasonably possible after final approval has been obtained for the Settlement and any appeals are exhausted. The Settlement Agreement specifies deadlines for distributing the Net Settlement Fund. *See* **Ex. 1**, Settlement Agreement at 22–23. Plaintiffs' Counsel has had this distribution method approved and utilized in other oil-and-gas class-action settlements. *See, e.g.*, *El Dorado Minerals, LLC v. Coffeyville Res. Refining & Mktg., LLC*, No. 23-CV-249-JAR (E.D. Okla.); *Ritter*

*v. Foundation Energy Mgmt., LLC, et al.*, No. 22-CV-246-JFH (E.D. Okla.); *Lee v. PetroQuest Energy, L.L.C., et al.*, No. 16-CV-516-KEW (E.D. Okla. Jan. 11, 2023).

Further, and importantly, as opposed to many other court-approved class action settlements in federal court, the Settlement Agreement doesn't require Class Members to submit claim forms in order to receive their share of the Net Settlement Fund. On the contrary, all Class Members who don't affirmatively opt-out of the Settlement will automatically receive a check without the burden of submitting a claim form. *See* **Ex. 1**, Settlement Agreement at 22–23.

### (c)    The Terms of Any Proposed Award of Attorneys' Fees, Including Timing of Payment

Under the terms of the Settlement Agreement, Plaintiffs' Counsel will apply to the Court for an award of attorneys' fees no later than twenty-eight days before the Final Approval Hearing. *See* **Ex. 1**, Settlement Agreement at 26, ¶ 7.1. Plaintiffs' Counsel anticipate that they will seek a fee award of no more than forty percent of the Gross Settlement Fund. Plaintiffs' Counsel have obtained an excellent recovery for Class Members in the form of an $825,000 cash payment. Under the Settlement Agreement, Plaintiffs' Attorneys' Fees are to be paid to Plaintiffs' Counsel from the Gross Settlement Fund, to the extent practicable through reasonably diligent efforts by the Settlement Administrator, one (1) business day following the date the Judgment becomes Final and Non-Appealable. *See* **Ex. 1**, Settlement Agreement at 27, ¶ 7.2.

### (d)    Any Agreement Required to be Identified under Rule 23(e)(3)

The parties have entered into the Settlement Agreement, which is submitted in full at **Exhibit 1**.

16

### 4.   The Settlement Treats Class Members Equitably Relative to Each Other

The Settlement treats Class Members equitably relative to each other. All Class Members identified will receive their proportionate share of the Net Settlement Fund based on the extent of their injuries. **Ex. 1**, Settlement Agreement at 19–20, ¶ 6.2.

Because all four factors weigh in favor of the Settlement here, Plaintiffs respectfully request the Court grant preliminary approval of the Settlement.

### C.    The Court Should Preliminarily Approve the Proposed Notice of Settlement to the Settlement Class

Rule 23(c)(2)(B) requires that notice of a settlement be "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Additionally, Rule 23(e)(1)(B) instructs courts to "direct notice in a reasonable manner to all class members who would be bound by the proposal." In terms of content, a settlement notice need only be "reasonably calculated, under all of the circumstances, to apprise [the] interested parties of the pendency of the [settlement proposed] and [to] afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). "The hallmark of the notice inquiry . . . is reasonableness." *Lucas*, 234 F.R.D. at 696 (internal quotations omitted).

Plaintiffs have submitted to the Court for approval the Notice of Settlement, which includes a postcard notice, a notice for publication on the settlement website, and a summary notice that will be published in various newspapers. The Notice of Settlement documents are attached to the Settlement Agreement as Exhibits 3–5. As set forth in the Settlement Agreement, Plaintiffs and Defendant have agreed that, no later than thirty (30) days after entry of the Preliminary Approval Order, or at such time as is ordered by the Court, the Court-appointed Settlement Administrator shall begin disseminating the Notice by sending a copy of

17

the postcard Notice (Settlement Agreement, Exhibit 3) via first-class mail to the last known mailing address of each Class Member who can be identified with reasonable effort to do so and also post the Notice (Settlement Agreement, Exhibit 4) on an Internet website dedicated to the Settlement. **Ex. 1**, Settlement Agreement at 12–13, ¶ 3.5. Plaintiffs and Defendant further agreed that the Settlement Administrator also shall publish (or cause to be published) the Notice (Settlement Agreement, Exhibit 5) one time in each of the following newspapers: (a) *The Oklahoman*, a paper of general circulation in Oklahoma; and (b) *The Tulsa World*, a paper of general circulation in Oklahoma. *Id.* After mailing the postcard Notice of Settlement and continuing through the date of the Final Fairness Hearing, the Settlement Administrator also will display (or cause to be displayed) on an Internet website dedicated to this Settlement the following documents: (a) the Notice of Settlement; (b) the Complaint; (c) this Settlement Agreement; (d) the Preliminary Approval Order; and (e) other publicly filed documents related to the Settlement. *Id.* The Notices direct Class Members to this website for additional information. And, of course, these documents will also be available on the Court's docket.

In accordance with Rule 23(c)(2)(B), the proposed Notice will inform Class Members about the Litigation, the proposed Settlement, and the facts they need to make informed decisions about their rights and options in connection with the Settlement. Specifically, the Notices clearly describe: (i) the terms and operations of the Settlement; (ii) the nature and extent of the release of claims; (iii) Plaintiffs' Counsel's intent to request attorneys' fees, reimbursement of expenses, and a case contribution award; (iv) the procedure and timing for objecting to the Settlement; (v) the procedure and timing for requesting exclusion; (vi) the date, time, and place of the Final Fairness Hearing; and (vii) ways to receive additional information about this Litigation and the proposed Settlement. The Notices also provide Class Members

18

with a toll-free number and email address for Settlement-related inquiries and a URL address for the dedicated Settlement website where Class Members may obtain additional information. Thus, the Notices are reasonably calculated to apprise the interested parties of the pendency of the Settlement and afford them an opportunity to opt out or to object. As such, the form and manner of the proposed Notice meets the requirements of both Rule 23 and due process. The Court should approve the Notices and the manner in which they will be delivered and communicated to the Settlement Class.

### D. Appointment of JND Legal Administration as Settlement Administrator Is Proper

To accomplish the processing of requests for exclusion, effectuating the notice campaign, and the distribution of the Net Settlement Fund in accordance with a Court-approved plan of allocation and distribution, Plaintiffs respectfully request the Court appoint JND Legal Administration ("JND") as the Settlement Administrator. JND is a leading class action administration company that has handled many complex class action settlements, including many class actions settlements in this Court.[3] Further, under the terms of the Settlement Agreement, Plaintiffs, Defendant, and their Counsel will work directly with the Settlement Administrator for much of the notice, administration, and distribution processes. Accordingly, Plaintiffs respectfully request the Court appoint JND as the Settlement Administrator.

---

[3] For example, JND served as administrator in all of the cases listed *supra* at 8 n.2 and has served as administrator in many other class actions in Oklahoma federal courts. More information about JND can be found on its website at: www.jndla.com.

## CONCLUSION

Plaintiffs respectfully request that the Court enter the agreed proposed Preliminary Approval Order, attached as Exhibit 1 to the Settlement Agreement (**Exhibit 1**), through which the Court will:

(1) certify the Settlement Class for Settlement purposes;

(2) preliminarily approve the Settlement;

(3) appoint Plaintiffs as Class Representatives for the Settlement Class;

(4) appoints Reagan E. Bradford and Ryan K. Wilson as Co-Lead Class Counsel and James U. White, Jr. as Additional Counsel for the Settlement Class;

(5) approve the form and manner of the proposed Notice;

(6) appoint JND Legal Administration as Settlement Administrator; and

(7) set a hearing date for final approval of the Settlement and application for an award of Plaintiffs' Attorneys' Fees, Litigation Expenses and Administration, Notice, and Distribution Costs, and a Case Contribution Award to Plaintiffs.

Respectfully Submitted,

*/s/ Ryan K. Wilson*
Reagan E. Bradford, OBA #22072
Ryan K. Wilson, OBA #33306
BRADFORD & WILSON PLLC
431 W. Main Street, Suite D
Oklahoma City, OK 73102
Telephone: (405) 698-2770
reagan@bradwil.com
ryan@bradwil.com

*–and–*

James U. White, Jr., OBA #9545
WHITE, COFFEY AND FITE, P.C.
P.O. Box 54783
Oklahoma City, Oklahoma 73154
(405) 842-7545
jwhite@wcgflaw.com

**COUNSEL FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

I hereby certify that on March 13, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to parties and attorneys who are filing users.

*/s/Ryan K. Wilson*
Ryan K. Wilson